**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JAN 23 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| K. Y., through his guardians David and Leilanie Yu, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> RICK SCHMITT, in his official capacity as Superintendent of the San Ramon Valley Unified School District, <br><br> Defendant-Appellee. | No.   18-16350 <br><br> D.C. No. 3:18-cv-00940-MMC <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
Maxine M. Chesney, District Judge, Presiding

Submitted January 6, 2020[**]
San Francisco, California

Before: WALLACE and FRIEDLAND, Circuit Judges, and HILLMAN,[***]
District Judge.

---

[*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]   The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]   The Honorable Timothy Hillman, United States District Judge for the District of Massachusetts, sitting by designation.

K.Y. ("Plaintiff") brought a lawsuit against San Ramon Valley Unified School District superintendent Rick Schmitt, alleging that San Ramon Valley High School's rules governing campaigns for school elections infringed on his free speech and due process rights in violation of federal and state law. Plaintiff sought injunctive and declaratory relief. We hold that this case is moot[1] and accordingly dismiss it for lack of jurisdiction.[2]

1. Plaintiff's case is moot because "the issues presented are no longer live" and there is thus no "'case or controversy' under Article III of the Constitution." *See In re Burrell*, 415 F.3d 994, 998 (9th Cir. 2005) (explaining that "[t]he test for mootness of an appeal is whether the appellate court can give the appellant any effective relief in the event that it decides the matter on the merits in his favor"

---

[1] We assume, without deciding, that K.Y. had standing to bring his suit. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (stating that courts "may assume without deciding that standing exists in order to analyze mootness" (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 66-67 (1997))).

[2] A live claim for damages, including nominal damages, "will prevent dismissal for mootness." *Jacobs v. Clark Cty. Sch. Dist.*, 526 F.3d 419, 425 (9th Cir. 2008) (quoting *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 872 (9th Cir. 2002)). Although Plaintiff sought "[a]ll other relief to which Plaintiff may be entitled," Plaintiff's briefing to this court does not mention any relief other than injunctive and declaratory relief. And in any event, we have declined "at the eleventh hour" to "transform [a] lawsuit from a request for prospective equitable relief into a plea for money damages to remedy past wrongs" based on a general prayer for "such additional or different relief as [the district court] deems just and proper." *Bain v. Cal. Teachers Ass'n*, 891 F.3d 1206, 1212 (9th Cir. 2018).

(quoting *Garcia v. Lawn*, 805 F.2d 1400, 1402 (9th Cir. 1986))).  Plaintiff is currently a senior at San Ramon Valley High School, and it appears that students are ineligible to run in school elections their senior year, because elected representatives serve in the subsequent school year, by which point current seniors are expected to have graduated.  It thus appears that Plaintiff cannot again run in an election governed by the school's allegedly unlawful rules.  Because there is no "live case or controversy" involving Plaintiff "justifying declaratory and injunctive relief against [the] school's . . . policy," we lack jurisdiction "unless an exception to mootness applies."  *See Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1098 (9th Cir. 2000); *see also Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 656-57 (9th Cir. 2002) (holding that, where students challenged schools' admissions policies but during the course of litigation became ineligible to apply to those schools, the students' claims were moot).

Plaintiff argues that the "capable of repetition, yet evading review" exception to mootness applies.  But this exception typically requires that there be "a reasonable expectation that the same complaining party [will] be subject to the same action again."  *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (alteration in original) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481 (1990)).  There is no indication that Plaintiff will again be subject to the allegedly unlawful rules, either as a candidate or as a non-candidate campaigning for one or more of the

students who is running in a school election.  To the extent that Plaintiff argues that he "could again be subject" before graduation to the general "speech code" of San Ramon Valley High School, that is not the "same action" complained of in his lawsuit, which challenged only the school election campaign rules and not the school's general rules regarding student speech.  *See Spencer*, 523 U.S. at 17 (quoting *Lewis*, 494 U.S. at 481).  And Plaintiff's bare assertion that "[h]e could again be subject to the High School's speech code," is insufficient to meet his "burden of showing that there is a reasonable expectation that [he] will once again be subjected to the challenged activity."  *See Lee v. Schmidt-Wenzel*, 766 F.2d 1387, 1390 (9th Cir. 1985).

    2.  Plaintiff's other arguments for why this case is not moot are unavailing. Plaintiff argues that he suffered an injury because he "conducted two campaigns under the auspices of the speech code, and was forced to self-censor during those campaigns."  But because Plaintiff has sought only injunctive and declaratory relief, and not retrospective relief, there is no "effective relief" that the federal courts could provide Plaintiff for his alleged retrospective injury.  *See In re Burrell*, 415 F.3d at 998 (quoting *Garcia*, 805 F.2d at 1402).  Plaintiff further argues that this case presents a live controversy under the First Amendment overbreadth doctrine.  But Plaintiff's argument fails under *Cole*, 228 F.3d 1092, where we held that "a litigant cannot sustain an overbreadth . . . claim if he no

longer has a personal interest in the outcome which itself satisfies the case or controversy requirement." *See id.* at 1098-99 (holding injunctive claims moot). For the reasons stated above, Plaintiff lacks such a "personal interest."[3] *See id.* at 1099.[4]

We dismiss K.Y.'s appeal as moot and remand to the district court with instructions to vacate the judgment and dismiss the complaint. *See Bd. of Trs. of Glazing Health and Welfare Trust v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (en banc).

**DISMISSED AND REMANDED WITH INSTRUCTIONS.**

---

[3] To the extent Plaintiff argues that this case is not moot because his younger sister, who is currently a freshman at San Ramon Valley High School, might "seek elected office," that contention fails for the same reason. *See Cole*, 228 F.3d at 1099.

[4] We grant Plaintiff's motion to supplement the record.

FILED

JAN 23 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*K.Y. v. Schmitt*, No. 18-16350

WALLACE, Circuit Judge, concurring in part and dissenting in part.

This case comes before us from the district court's dismissal of K.Y.'s First Amended Complaint for lack of Article III standing. After the parties briefed the issue of standing, we instructed them to file supplemental briefs on mootness. We were concerned that the case was rendered moot with the passing of the last student election for which K.Y. was eligible to be a candidate.

My colleagues have since concluded that the case is moot, remanding to the district court with an instruction to vacate its judgment. I write separately because, in my view, Article III standing is a threshold question we ought to resolve before we may turn to mootness. Applying the law of standing, I would affirm the district court.

### I.

I realize that it has been over four decades since I last taught a course on federal jurisdiction. However, standing is one of the few constants in our system of law, "an essential and unchanging part of the case-or-controversy requirement of Article III." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008), *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Enshrined in the constitutional text as a clear limit of our judicial power, standing has been "considered a threshold question" that we must resolve. *Steel Co.*

*v. Citizens for a Better Env't*, 523 U.S. 83, 88 (1998).  The Supreme Court has instructed us not to entertain the merits of a case without first addressing our jurisdiction.  *See id.* at 100–01.  We cannot assume hypothetical jurisdiction, only then to "resolve contested questions of law."  *Id.* at 101.  We have no power to do so.

The Supreme Court has since concluded that assuming the existence of Article III standing is improper only if a court does so to reach the merits of a case.  Although the Supreme Court in *Steel Co.* had "reasoned that subject-matter jurisdiction necessarily precedes a ruling on the merits," the Supreme Court since said that "the same principle [did] not dictate a sequencing of jurisdictional issues."  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).  Indeed, we may "resolve the question whether there remains a live case or controversy . . . without first determining whether [there is] standing to appeal because the former question, like the latter, goes to [] Article III jurisdiction."  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 66–67 (1997).  We have thus previously assumed a plaintiff's standing to resolve a case on mootness grounds.  *See Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 989 (9th Cir. 1999), *citing Arizonans for Official English*, 520 U.S. at 66–67.

I respectfully disagree with the view that a court may assume Article III standing only to resolve a case on a different jurisdictional basis.  *See Burke v.*

*Barnes*, 479 U.S. 361, 366 (1987) (Stevens, J., dissenting) (observing that to address mootness first, a court must first assume the existence of standing). When a plaintiff arguably lacks standing to bring a case in federal court at all, a court should address mootness only after assuring itself that there is Article III standing.

Although standing and mootness both "require some sort of interest in the case, and both go to whether there is a case or controversy under Article III," the "doctrines have important differences." *Jackson v. Cal. Dept. of Mental Health*, 399 F.3d 1069, 1072–73 (9th Cir. 2005). Standing doctrine ensures that "the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." *Id.* at 1073, *quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000). On the other hand, mootness issues "arise later in the case, when the federal courts are already involved and resources have already been devoted to the dispute." *Id.*, *citing Friends of the Earth, Inc.*, 528 U.S. at 191. By reaching mootness when there was no standing at the outset of the case, we needlessly confront a doctrine uniquely designed to govern cases that have "been brought and litigated, often . . . for years." *Friends of the Earth, Inc.*, 528 U.S. at 190.

In addition, by skipping over the question of standing, we reach issues that could have been avoided had we followed a more structured jurisdictional sequence. Here, my colleagues addressed, and rejected, K.Y.'s argument that the case was not

moot because it presented an issue that was capable of repetition, yet evading review. However, exceptions to mootness, such as voluntary cessation and capable of repetition, yet evading review do not apply in the standing context. *See Friends of the Earth, Inc.*, 528 U.S. at 191. When a defendant has "never inflicted an injury sufficient to give [the plaintiff] standing to bring the issue," the plaintiff's "attempt to make out a theory that the issue was 'capable of repetition, yet evading review' is [] inapposite, as that familiar exception to mootness cannot confer standing on a claim when injury in fact was missing at the outset." *WorldCom, Inc. v. F.C.C.*, 308 F.3d 1, 11 (D.C. Cir. 2002), *citing Friends of the Earth, Inc.*, 528 U.S. at 191.

The importance of adhering to a strict chronological sequence is not purely academic. Were we to conclude that there was no Article III standing, as I believe we should have, we would have affirmed the district court's judgment. However, because my colleagues have decided to resolve the case on mootness grounds, the district court's well-reasoned decision is now vacated. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 40 (1950). As a former district court judge, I can appreciate the strange result of being correct on the law used to resolve the case— but being reversed.

There is good reason not to vacate the district court's judgment for standing. Resolving questions of standing, especially difficult ones, serves an important purpose. Indeed, we address Article III standing in part "to assure that concrete

4

adverseness [] sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions[.]" *Baker v. Carr*, 369 U.S. 186, 204 (1962). For example, in our principal case on Article III standing in the First Amendment context, we concluded that although the plaintiff came "to the very edge of showing injury in fact," he had "not made it over the threshold." *Lopez v. Candaele*, 630 F.3d 775, 794 (9th Cir. 2010). We could have, but did not, address the parties' arguments on mootness based on the asserted change in the sexual harassment policy which gave rise to the plaintiff's complaint.

Nor would judicial resources be wasted by resolving this appeal based on standing principles. The district court here ruled on the discrete issue of standing. The parties briefed the issue of standing. Therefore, especially on an appeal from the district court's dismissal for lack of standing, we should not assume that a plaintiff had standing after concluding that he, in fact, did not. In such a case, there is much to be lost, and little to be gained, by assuming the existence of standing.

I therefore respectfully question the Supreme Court's view that courts should be afforded jurisdictional flexibility when it comes to standing. However, even under the current caselaw, we are given a choice whether to address standing first. Given the choice, I believe we should adopt the better practice of not assuming standing exists to reach mootness. *Cf. Common Cause of Pennsylvania v. Pennsylvania*, 558 F.3d 249, 255 n.2 (3d Cir. 2009) ("Because we decide this appeal

5

on the basis of standing, we need not address whether Plaintiffs' claims are moot") (citations omitted).

## II.

Starting with the threshold question before us, I agree with the district court that K.Y. lacked standing. In the First Amended Complaint, K.Y. alleged that he intended to run for student body president. He alleged to have "a specific and credible threat that" the School District would "enforce the campaign rules against him if he uses language that is offensive to others in his future campaign for ASB president." K.Y. had a "concrete plan to engage in acts," which he claimed would have violated the campaign rules banning the use of inappropriate or offensive language in campaign materials.

In deciding whether a pre-enforcement plaintiff has standing to assert a First Amendment violation, we consider three factors: (1) whether he has shown a reasonable likelihood that the government will enforce the challenged law against him; (2) whether he has established, with some degree of concrete detail, that he intends to violate the challenged law; and (3) whether the challenged law is applicable to the plaintiff, either by its terms or as interpreted by the government. *See Lopez*, 630 F.3d at 786. All three factors weigh against standing here.

First, K.Y. has not shown a reasonable likelihood that the School District would have enforced the 2018 campaign rules against him. Without a specific threat

of enforcement, K.Y.'s allegations are too attenuated to confer standing. Other than K.Y.'s allegation of a subjective chill, the First Amended Complaint "is devoid of any threat—generalized or specific—directed toward" K.Y. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1140 (9th Cir. 2000) (en banc).

K.Y. alleges that the School District's enforcement of the campaign rules against his older brother in the 2017 election established a credible threat that the School District would enforce the 2018 campaign rules against him for his intended speech. Although, "[a] history of past enforcement against parties similarly situated to the plaintiff[] cuts in favor of a conclusion that a threat is specific and credible," *Lopez*, 630 F.3d at 786–87 (citation omitted), for a threat to be credible based on allegations of past enforcement, a plaintiff must allege "[p]ast enforcement *against the same conduct*." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014) (emphasis added).

Here, K.Y. alleges that as part of the 2017 campaign, his older brother was disciplined by the School District for violating its campaign rules after distributing a video of a James Bond parody that included two Americans of Afghan descent posed as a radical group. K.Y. has not alleged any facts supporting an inference that he intended to engage in similar speech. The first *Lopez* factor thus weighs against standing.

Second, K.Y. fails to establish with concrete detail that he intended to violate the challenged 2018 campaign rules. "Because the Constitution requires something more than a hypothetical intent to violate the law, plaintiffs must articulate a concrete plan to violate the law in question by giving details about their future speech such as when, to whom, where, or under what circumstances." *Lopez*, 630 F.3d at 787 (internal quotation marks, alteration, and citation omitted). The allegations "must be specific enough so that a court need not 'speculate as to the kinds of political activity the [plaintiffs] desire to engage in or as to the contents of their proposed public statements or the circumstances of their publication." *Id.*, *quoting United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 90 (1947) (alteration in original).

*Lopez* controls this appeal. There, the plaintiff desired to discuss "his Christian views on politics, morality, social issues, religion, and the like," and wished to "share his beliefs about Christianity with others," in the future, including by "discussing his faith and how it applies to guide his views on political, social, and cultural issues and events." *Id.* at 790 (alterations in original and internal quotation marks omitted). We held that the plaintiff lacked standing because he had alleged "few details about his intended future speech." *Id.*

K.Y.'s allegations are similarly generic. K.Y. alleges that it is "premature" to "predict exactly what [his] campaign will center on or what language or materials

8

will be effective" in February 2019. He believes that "jarring images and/or provocative language can be used very effectively to bring attention to his candidacy" and therefore, he "intends to use them." K.Y. also "believes that the most effective campaign will address sensitive issues and therefore could be viewed by some as inappropriate or offensive simply because they touch on *sensitive* but important issues, such as race, immigration policy, or religion." He desires to have in his "ar*senal" both "language and ideas" that he finds appropriate,* but which administrators and others may find inappropriate or offensive.

      K.Y.'s allegations regurgitate the full scope of the campaign rules barring students from creating campaign signs and slogans that are "inappropriate," including material that is "racist, sexist, or otherwise offensive to others." K.Y.'s "general intention to violate" the School District's campaign rules at some "unknown date in the future does not rise to the level of an articulated, concrete plan." *Thomas*, 220 F.3d at 1139. The second *Lopez* factor therefore also weighs against standing.

      Third, K.Y. fails to establish that the 2018 campaign rules would apply to his intended speech in 2019. As the district court explained, the 2018 campaign rules were "by their own terms only applicable to the election that was conducted in February 2018." That the 2018 campaign rules could have changed for the 2019 election undermines K.Y.'s contention that the campaign rules would regulate his

9

intended speech in 2019. However, even if the 2018 campaign rules had governed the 2019 student elections, K.Y. did not allege specific facts supporting the inference that his intended speech was "clearly prohibited by" the campaign rules. *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1173 (9th Cir. 2018). The third *Lopez* factor thus also weighs against Article III standing.

Because all three *Lopez* factors weigh against standing, the district court properly concluded that K.Y. lacked standing to challenge the campaign rules. K.Y.'s general objection to the campaign rules barring "inappropriate" or "offensive" speech is not a substitute for the rigid strictures of Article III for the "inquiry into injury-in-fact does not turn on the strength of plaintiffs' concerns about a law, but rather on the credibility of the threat that the challenged law will be enforced against them." *Lopez*, 630 F.3d at 792, *citing Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298–99 (1979).

I would affirm the district court's dismissal for lack of standing.